IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSTEOSTRONG FRANCHISING, LLC., Plaintiff, | § § § | |
| V. | § § | CIVIL ACTION NO. _____ |
| JOHN DE WOLF, DEBORAH NOBLE, DANIEL MOYER, NOBEL PROPERTY MANAGEMENT, LLC, and LIVING TREE OF ABQ LTD. CO. Defendants. | § § § § § | |

## UNSWORN DECLARATION OF KYLE ZAGRODZKY

1. "My name is Kyle Zagrodzky, I am over 18 years of age, of sound mind, and capable of making this unsworn declaration. The facts stated in this unsworn declaration are within my personal knowledge and are true and correct.

2. I am the CEO of OsteoStrong Franchising, LLC ("OsteoStrong").

3. OsteoStrong is the leading company providing services promote healthy joints, strong bones and muscles, and better balance and flexibility through a proprietary system and methodology. Our primary focus is the promotion of skeletal strength which impacts the entire body in many ways using a process known as Osteogenic loading.

4. OsteoStrong has created confidential and trade secret information related to the detailed unique operations, sales, customer service standards, and marketing for the franchises. Additionally, OsteoStrong has created for itself many proprietary operational and organizational standards for its own day to day business based on decades of experience and learnings as a small business owner, as a Curves franchisee, and Founder of the iGoFigure software company. I have

personally spent significant time and resources creating the training and manuals and related materials since OsteoStrong's inception in 2012.

5. The pattern, process, procedure, and compilation of information is not patented, and is known only to certain individuals within the OsteoStrong organization. Every person who obtains OsteoStrong's proprietary information must sign a confidentiality agreement, which includes franchisees and their staff as required by the Franchise Agreement. Contractors and employees of OsteoStrong sign an agreement which includes the noncompete agreement and confidentiality clause. All franchisees sign a noncompete agreement and acknowledge the value and sensitive nature of the confidential OsteoStrong systems. The franchise agreements, contractor agreements, and training materials are stored on OsteoStrong servers with access only granted to a few executives. The access to the server is password protected and the passwords are kept from all other OsteoStrong staff and contractors. Because these trade secrets give OsteoStrong a competitive edge in its industry, OsteoStrong utilizes confidentiality agreements and passwords protection to prevent its techniques and processes from being readily ascertainable to others.

6. I have reviewed Plaintiff OsteoStrong's Original Complaint and request for Injunctive Relief. The facts contained in paragraphs 11-18, 22-29, and 31 are true and correct.

7. In addition, I am the custodian of the records of OsteoStrong. Attached hereto to OsteoStrong's Complaint are Exhibits B-D, consisting of records from the Company. These records are kept by OsteoStrong in the regular course of business, and it was the regular course of business of OsteoStrong for an employee or representative of OsteoStrong, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon after. The records attached hereto are the originals or exact duplicates of the original.

8. John DeWolf, Daniel Moyer and Deborah Noble became franchisees of OsteoStrong on September 20, 2014 through the entity Noble Property Management, LLC ("NPM"). NPM signed a confidentiality agreement and non-compete agreement, and DeWolf, Moyer and Noble all signed the franchise agreement with a personal guaranty and undertaking.

9. The Franchise Agreement signed by NPM, DeWolf, Moyer and Noble contains a confidentiality and invention agreement with OsteoStrong, a covenant relating to the protection of OsteoStrong's confidential information and trade secrets, as well as other matters. As a condition of that agreement, Defendants are also required to have all of their employees sign a confidentiality and noncompete agreement.

10. In 2016 I asked DeWolf, Moyer and Noble to help with the training of the OsteoStrong franchisees and they agreed. We maintained the same level of care and secrecy with our training of confidential information, as those who assisted were required to sign confidentiality agreements under the franchise agreement.

11. I initially wrote the first training manuals and created all of the accompanying training videos. NPM assisted in 2017 to add to the information at the close and frequent direction of myself. Information was originally provided to them as franchisees when I personally trained their team at their residence in New Mexico prior to their opening their center and expounded upon with the agreement to assist in training OsteoStrong franchisees and staff.

12. All of the intellectual property created by and used for OsteoStrong's benefit are owned by True Wellness, LLC, which is an OsteoStrong affiliate. OsteoStrong has a licensing agreement with True Wellness, LLC for the use of the intellectual property.

13. Employees of Defendants' franchise location conducted trainings on behalf of OsteoStrong at different franchise locations around the world for roughly three to four years. They

effectively became the training department for OsteoStrong, scheduling and managing training events as well as the training materials. They were trusted individuals who had access to all technical information related to OsteoStrong's most protected trade secrets and confidential information.

14. DeWolf, Moyer and Noble asked that their payment for the trainings be made to Living Tree of ABQ Ltd. Co.("Living Tree") and OsteoStrong agreed. We did not care who received the payments so long as the work was being completed. At no time did the payments to Living Tree mean anything other than where DeWolf, Moyer and Noble wanted to be paid. The same confidentiality, non-compete and ownership rights to OsteoStrong and its confidential information remained the same, as they were personal guarantors on the franchise agreement.

15. No written agreement had been made with regard to the trainings, but we worked well together for almost five years without a hitch. We had discussed a formalized contract with regards to the trainings provided by DeWolf, Moyer and Noble, but never reached an agreement.

16. In August of this year I traveled to Albuquerque to visit DeWolf, Moyer and Noble to discuss various topics dealing with OsteoStrong. Before I arrived, I was told that DeWolf, Moyer and Noble did not want to continue trainings for OsteoStrong but that they still would remain as franchisees. When I met with them, I was presented with a contract requesting $38,000 per month in addition to their current fee structure from OsteoStrong to continue the trainings, and that I was to acknowledge that training materials were to be given copyright ownership to DeWolf, Moyer and Noble.

17. During the same meeting, I was told that DeWolf, Moyer and Noble had filed all of OsteoStrong's proprietary and confidential training manuals and materials with the US Copyright Office. I was surprised by their tactics and refused to sign the agreement that they forced

upon me late in the evening upon my arrival. Soon after I returned home, I let them know that they had violated the franchise agreement with their actions and that they should withdraw any copyright claim they asserted with the Copyright Office.

18. It is my understanding and belief that DeWolf, Moyer and Noble have not contacted the Copyright Office to correct their wrongs and have only asked for money to go away. They have used my company's trade secrets and confidential information that OsteoStrong has spent significant resources and time in developing since they signed their franchise agreement in 2014.

19. As a result of the Defendants' wrongful acts, OsteoStrong has suffered the loss of its trade secrets and confidential information, which it has accumulated over the years as a successful business in the wellness industry, and most probably will sustain damages in the form of lost profits, lost business prospects, and loss of business goodwill. The confidential information and trade secrets are used in the usual course of business for OsteoStrong and has actual commercial value as it has been sold in commerce and continues to be sold through franchises and clients all around the world. Our trade secrets are valuable and give us an opportunity to obtain a business advantage over competitors who do not know or use it.

20. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of November 2019.

_____
Kyle J. Zagrodzky