IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSTEOSTRONG FRANCHISING, LLC., | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. <u>4:19-CV-04389</u> |
| | § | |
| JOHN DE WOLF, DEBORAH NOBLE, | § | |
| DAN MOYER, NOBEL PROPERTY | § | |
| MANAGEMENT, LLC, and LIVING TREE | § | |
| OF ABQ LTD. CO. and KARYN A. | § | |
| TEMPLE, in her official capacity as the Acting | § | |
| Register of Copyrights of the U.S. Copyright | § | |
| Office | | |
| Defendants. | | |

## PLAINTIFF'S FIRST VERIFIED
## COMPLAINT & APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff, OSTEOSTRONG FRANCHISING, LLC brings this Complaint against

Defendants, NOBLE, JOHN DE WOLF, DEBORAH NOBLE, DAN MOYER, NOBLE

PROPERTY MANAGEMENT, LLC, LIVING TREE OF ABQ LTD. CO., and KARYN A.

TEMPLE, in her official capacity as the Acting Register of Copyrights of the U.S. Copyright

Office and respectfully represents as follows:

## I
## PARTIES

1.      Plaintiff OsteoStrong Franchising, LLC, (hereinafter "OsteoStrong") is a Texas

domestic limited liability company with its corporate office located in Houston, Texas.

2.      Defendant, John De Wolf ("De Wolf") is a resident citizen of New Mexico. De

Wolf's domicile is located at 137 Saddle Spur Trail, Tijeras, New Mexico, 87059.

3.      Defendant, Deborah Noble ("Noble") is a resident citizen of New Mexico. Noble's

domicile is located at 137 Saddle Spur Trail, Tijeras, New Mexico, 87059.

4.     Defendant, Dan Moyer ("Moyer") is a resident citizen of New Mexico. Noble's domicile is located at 137 Saddle Spur Trail, Tijeras, New Mexico, 87059.

5.     Defendant Noble Property Management, LLC ("NPM") is a New Mexico corporation with its principal place of business located at 137 Saddle Spur Trail, Tijeras, New Mexico, 87059.  NPM's registered agent is Ross B. Perkal, who may be served at 708 Marquette NW, Albuquerque, NM, 87102.

6.     Defendant Living Tree of Abq Co. Ltd. ("LTA") is a New Mexico corporation with its principal place of business located at 137 Saddle Spur Trail, Tijeras, New Mexico.  NPM's registered agent is Glenna Donnell, who may be served at 137 Saddle Spur Trail, Tijeras, New Mexico, 87059.

7.     Defendant Karyn A. Temple is named in her official capacity as the Acting Register of Copyrights and Director of the U.S. Copyright Office. That office is responsible for recording the instruments that are in controversy in this suit and Plaintiff seeks injunctive relief against the publication of the documents or dissemination of the documents in any form.

8.     OsteoStrong reserves the right to add more defendants as more information becomes available about other co-conspirators participating in Defendants' scheme.

## II
## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the suit arises under the Defend Trade Secrets Act of 2016.  18 U.S.C. § 1836(c). Additionally, Defendant NPM signed a franchise agreement with OsteoStrong, Defendants Nobel, Moyer and De Wolf are personal guarantors of the Franchise Agreement, and paragraph 19.4 of said agreement requires venue and jurisdiction in this Court, as OsteoStrong maintains its principal

address in Houston Harris County, Texas.  *See Exhibit B Franchise Agreement.*  Defendant LTA is a joint venture of with the other defendants.

10.     The Court has supplemental jurisdiction over OsteoStrong's remaining claims pursuant to 28 U.S.C. §1367 because they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) because OsteoStrong is the owner of the trade secret and its corporate office is in Houston, Texas.  Defendants tortious conduct of misappropriating OsteoStrong's confidential information and trade secrets, and breach of contract caused OsteoStrong injury in Houston, Texas.[1]

## III
## CONDITIONS PRECEDENT

12.     All conditions precedent have been performed or have occurred.

## IV
## FACTS

### OsteoStrong's Background

13.     This Complaint and Application for Injunctive Relief is supported by the statement of Kyle Zagrodzky, attached hereto as Exhibit A.

---

[1] *See Blanchard & Co. v. Spectrum Numismatics*, CIVIL ACTION NO. 93-2554 SECTION "R", 1994 U.S. Dist. LEXIS 15369, at *13-14 (E.D. La. 1994) (*"Tortious injury constitutes a substantial event giving rise to Blanchard's claim."*)  (citing *Fogle v. Ramsey Winch Co., Inc.*, 774 F. Supp. 19, 24 (D.D.C. 1991) ("Moreover, the injury giving rise to the action took place in the District; this constitutes another justification for venue in this Court under 28 U.S.C. § 1391(A)(2)")).

14.     OsteoStrong is a global franchise that offers services to promote healthy joints, strong bones and muscles, and better balance and flexibility through a proprietary system and methodology. Each OsteoStrong location is independently owned and operated.

15.     Effective September 20, 2014, Defendant NPM signed a franchise agreement with OsteoStrong ("Franchise Agreement"). *Exhibit B.* Defendants De Wolf, Noble and Moyer personally guaranteed the obligations of the Franchise Agreement. *Exhibit B, Exhibit Attachment D-1.*

16.     Paragraph 8.4 of the Franchise Agreement sets forth the confidentiality requirements. *Exhibit B Franchise Agreement at paragraph 8.4.* Training material for franchisees and several other aspects of the operation of OsteoStrong franchisees is proprietary OsteoStrong confidential information. *Exhibit A Zagrodzky Affidavit.* Additionally, the Franchise Agreement requires that any new concept, process or improvement developed in the operation of an OsteoStrong center shall become the sole property of OsteoStrong. *Exhibit B Franchise Agreement paragraph 15.7.*

17.     After Defendants became a franchisee, OsteoStrong approached Defendants about helping with the training of OsteoStrong franchisees. *Exhibit A, Zagrodzky Affidavit.* Defendants agreed, and for the next four to five years, Defendants handled training of OsteoStrong franchisees, conducting in-house trainings for franchisees and traveling to franchise locations around the world to handle onsite trainings. *Exhibit A Zagrodzky Affidavit.* Defendants effectively became the training department for OsteoStrong, scheduling and managing training events and managing the training material. *Exhibit A.* Additionally, Defendants worked with OsteoStrong's CEO and others to help draft a confidential training manual and other confidential training videos and material. *Exhibit A.* Of course, the material was always considered the proprietary confidential

material of OsteoStrong; one of the first iterations of the training manual listed OsteoStrong's affiliate, True Wellness LLC, as the copyright holder of the manual. *Exhibit D, Excerpt from 1997 Training Manual; Exhibit A Zagrodzky Affidavit.* True Wellness is an OsteoStrong subsidiary that holds OsteoStrong intellectual property and has licensed it to OsteoStrong. *Exhibit A.*

18. While Defendants handled training for OsteoStrong, no formal agreement was ever signed, though invoices for services were submitted by Defendant LTA and paid by OsteoStrong. *Exhibit A Zagrodzky Affidavit.* From 2017 through the summer of 2019, the parties discussed formalizing the training relationship, but no agreement had been reached, even though the topic was discussed regularly. *Exhibit A.*

19. In August 2019, OsteoStrong CEO Kyle Zagrodzky had a planned visit to Albuquerque to visit Defendants to discuss training and other goals of OsteoStrong. *Exhibit A Zagrodzky Affidavit.* Immediately prior to leaving for Albuquerque, Defendants notified Mr. Zagrodzky that they were not going to continue training and that they would discuss it during his trip. *Exhibit A Zagrodzky Affidavit.* At the meeting, Defendants presented Mr. Zagrodzky with a contract demanding an extra $38,000 per month from OsteoStrong and assigning copyrights to training material to Defendants. *Exhibit C Demand from Defendants.*

20. Shockingly, Defendants also notified Mr. Zagrodzky that they had filed OsteoStrong's proprietary and confidential training manuals and material with United States Copyright Office. *Exhibit E* United States Copyright Office Filing.

21. Rather than succumb to Defendants' extortion, OsteoStrong refused to sign the agreement and notified Defendants that publication of the confidential material has violated their franchise agreement. *Exhibit A.* The Defendants still claim ownership or OsteoStrong's

proprietary and confidential training material, and, upon information and belief, have done nothing

to retract their filing of the confidential information in the public domain.  *Exhibit A.*

### *Select Provisions of the Documents*

22.     The Franchise Agreement prohibits Defendants from using or disclosing

OsteoStrong's trade secrets and other confidential information, as follows:

> 8.4.     Confidentiality.  You shall maintain the confidentiality of all Confidential Information.  You shall use Confidential Information only in connection with the operation of the Center, and shall divulge Confidential Information only to your employees and only on a need to know basis.  You hereby acknowledge and agree that all Confidential Information, including Member Information, belongs exclusively to Franchisor.  This obligation shall survive termination or expiration (without renewal) of this Agreement.

Defendants were required to sign and have their employees sign confidentiality agreements:

> 15.4.     Covenants from Individuals.  Each individual who attends Franchisor's training program shall be required to sign a confidentiality and non-competition agreement substantially in the form attached as Attachment D-2 to this Agreement.  You shall be responsible for ensuring compliance with such agreement.

The Franchise Agreement establishes that OsteoStrong owns all that Defendants claim to have created:

15.7. Improvements. If you, your employees, or Owners develop any new concept, process or improvement in the operation or promotion of OsteoStrong® Center (an "**Improvement**"), you agree to promptly notify Franchisor and provide Franchisor with all necessary related information, without compensation. Any such Improvement shall become Franchisor's sole property and Franchisor shall be the sole owner of all related patents, patent applications, and other intellectual property rights. You and your Owners hereby assign to Franchisor any rights you or your Owners may have or acquire in the Improvements, including the right to modify the Improvement, and waive and/or release all rights of restraint and moral rights therein and thereto. You and your Owners agree to assist Franchisor in obtaining and enforcing the intellectual property rights to any such Improvement in any and all countries and further agree to execute and provide Franchisor with all necessary documentation for obtaining and enforcing such rights. You and your Owners hereby irrevocably designate and appoint Franchisor as agent and attorney-in-fact for you and for them to execute and file any such documentation and to do all other lawful acts to further the prosecution and issuance of patents or other intellectual property right related to any such Improvement. In the event that the foregoing provisions of this Section 15.7. are found to be invalid or otherwise unenforceable, you and your Owners hereby grant to Franchisor a worldwide, perpetual, non-exclusive, fully-paid license to use and sublicense the use of the Improvement to the extent such use or sublicense would, absent this Agreement, directly or indirectly infringe on you or your Owners' rights therein.

The Franchise Agreement acknowledges that a violation of the confidentiality requirement entitles OsteoStrong to injunctive relief without filing a bond:

agreement.
15.5. Breach of Covenants Causes Irreparable Injury. You acknowledge that your violation of any covenant of this Article 15 would result in irreparable injury to Franchisor for which no adequate remedy at law may be available, and you consent to the issuance of, and agree to pay all court costs and reasonable attorneys' fees incurred by Franchisor in obtaining, without the posting of any bond, an ex parte or other order for injunctive or other legal or equitable relief with respect to such conduct or action.

--- --- restrictions shall not apply to your

Section 19.3.3.).
19.4. Right to Injunctive Relief. Notwithstanding the foregoing provisions of Section 19.3., the parties' agreement to arbitrate shall not apply to controversies, disputes or claims related to or based on amounts owed to Franchisor pursuant to this Agreement, the Marks, Copyrighted Works or Franchisor's Confidential Information. Moreover, regardless of this arbitration agreement, Franchisor and you each have the right in a proper case to seek temporary restraining orders and injunctive relief in any court of competent jurisdiction.

. . .  . finally resolved

### *LTA as a Joint Venture Partnership with NPM*

It is expected that LTA will claim that it is the author of the works it filed, that it has no work

made for hire agreement with OsteoStrong, and that it is under no confidentiality requirement

with OsteoStrong. This argument is a sham.

*Background.*

23.     Just who exactly are the Defendants?  Defendants are a group of performing artists known as the Pink Flamingos ("The Pinks").  *See* http://thepinkflamingos.com.  The Pinks live in a commune in the Sandia Mountains about 45 minutes northeast of Albuquerque. They perform live music and entertainment at corporate events around the world.  Defendants/The Pinks expressed an interest in opening an OsteoStrong franchise as an investment to diversify their income and because of the significant positive impact the OsteoStrong exercise had on one of their members. They were welcomed to the OsteoStrong family, and even performed at OsteoStrong conventions.

24.     The Defendants/Pinks run a successful OsteoStrong franchise. They staff their location with entertainers from their commune, and these same entertainers are OsteoStrong trainers and helped put together confidential OsteoStrong training material.

25.     Defendant NPM is owned by Dan Boyer, John De Wolf and Deborah Noble.  They each have an obligation to keep confidential information confidential.  They are also required to have all their center employees sign a confidentiality and noncompete agreement.

26.     OsteoStrong asked the Defendants/Pinks to help with training and they agreed.  The conversation was with Defendant Boyer primarily as well as De Wolf and Noble.  One of the compelling reasons to use the Defendants/Pinks was because their entertainer background made them great trainers.

27.     Additionally, because all who trained and/or worked on the training material also worked at their OsteoStrong location, they would have hands on experience running an

OsteoStrong franchise. And, of course, Defendants were required to have them all sign confidentiality agreements.

*Joint Venture Relationship.*

28.     When it came time to pay the Defendants/Pinks, they asked that another of their entities, Defendant LTA, be paid.  OsteoStrong made payments at their request.

29.     Although no written agreement was made between the Defendants with regard to the trainings, it is undisputed that John DeWolf, Deborah Noble and Daniel Moyer signed agreements to keep the OsteoStrong information confidential, and payment was made as a mere convenience for John DeWolf, Deborah Noble and Daniel Moyer.

30.     At no time did Osteostrong give Living Tree permission to use the confidential information for Living Tree's benefit or use OsteoStrong trademarks for their benefit. The sole agreement lies under the Franchise contract dated September 20, 2014 that 1) The manuals shall at all times remain the sole property of OsteoStrong; 2) that they shall maintain the confidentiality of all Confidential Information; and 3) any improvements shall become OsteoStrong's sole property and OsteoStrong shall be the sole owner of all related intellectual property rights.

31.     Living Tree is the joint venture partner of Noble PM, John DeWolf, Deborah Noble and Daniel Moyer, who undisputedly signed the franchise agreement at issue. The sole use of Living Tree, under the eyes of OsteoStrong and all parties was a name on a check to send payment to the guarantors.

32.     The shocking undertakings by the guarantors to unlawfully take the confidential information from OsteoStrong and use it as their own was a ruse to extort more money from OsteoStrong and hold their property ransom. The information was provided to the guarantors under

the OsteoStrong Franchising Agreement, and the parties acted under the terms of the agreement until the recent deceptive acts by the guarantors.

33.     The guarantors are the same members of both Noble Property Management, LLC and Living Tree of ABQ Ltd. Co, and share the same addresses for mailing as well as the same addresses for the registered agent for Living Tree.

34.     John DeWolf, Deborah Noble and Daniel Moyer have misused Living Tree to carry out its nefarious wrongdoings. At all times OsteoStrong has worked to protect its company, confidential information and brand from those seeking to steal from it.

## V
## CAUSES OF ACTION

*Count 1—Misappropriation (Defend Trade Secrets Act of 2016—DTSA)* [2]

35.     OsteoStrong re-alleges and incorporates by reference paragraphs 1 through 31 as if fully alleged herein.

36.     Defendants obtained access to OsteoStrong's trade secrets and confidential information, created material containing the Confidential Information, unlawfully claimed ownership in the material, and published the material to the world.  Confidential trade secret information misappropriated by Defendants includes:

> OsteoStrong Training Manuals (2017 and 2018); The OSU Way Booklet; Spectrum Upper GT 2.0; The Spectrum Booklet; 24-week Program Booklet; Test Questions; First Appointment Booklet; Spectrum Upper GT 2.0; Spectrum Lower GT 2.0.; Spectrum Core GT 2.0; Spectrum Postural GT 2.0 (with Bill); Spectrum Postural GT 2.0 (with Alicia and

---

[2] The DTSA is modeled on the Uniform Trade Secrets Act, which has been adopted with slight modifications in many jurisdictions throughout the United States, including Texas.  In Texas, the state equivalent is called the Texas Uniform Trade Secrets Act (hereinafter "TUTSA").  Due to the lack of cases interpreting the DTSA, OsteoStrong also cites to federal cases interpreting the language of the TUTSA.

Joey); What is the Rapid GT Based on?; What is the Rapid GT for the Core GT?; Front Desk Forms; and Introduction to Franconnect Training Module.

*See* Exhibit A, E.

37.     The trade secret information obtained by Defendants are for products, services, and techniques that are used in or intended for use in, interstate or foreign commerce.  As stated above, OsteoStrong sells its products and service throughout the U.S.  The information misappropriated by Defendants, relates to these products and services.

38.     As expressly acknowledged in the OsteoStrong Agreement and the NDA, OsteoStrong considers much of the information that it provided to Defendants to be confidential and trade secrets.  To the extent Defendants claim ownership of OsteoStrong's Confidential Material, the Franchise Agreement conveys that ownership to OsteoStrong.  *Exhibit B.*  As evinced by the creation and execution of the Franchise Agreement and related confidentiality terms, OsteoStrong has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.  *See* Exhibit A.

39.     Defendants have done nothing to retract the public dissemination of OsteoStrong' trade secrets in the public domain.  Defendants are maliciously and willfully using misappropriated trade secrets and confidential information to their own advantage.

40.     As a direct and proximate result of Defendants' misappropriation, OsteoStrong has sustained substantial damages in an amount that will be established at trial.

41.     Defendants' actions have caused and will continue to cause OsteoStrong irreparable harm if not preliminarily and permanently enjoined.

42.     OsteoStrong demands judgment against Defendants for compensatory and exemplary damages, preliminary and permanent injunctive relief, prejudgment interest, an award

of costs and reasonable attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D), and such other relief as the Court deems proper.

### Count 2—Misappropriation (Texas Uniform Trade Secrets Act--TUTSA)

43.     OsteoStrong re-alleges and incorporates by reference paragraphs 1 through 39 as if fully alleged herein.

44.     Defendants' conduct, as described above, also constitutes malicious and willful misappropriation in violation of the Texas Uniform Trade Secrets Act.[3]

45.     As a direct and proximate result of Defendants' misappropriation, OsteoStrong has sustained substantial damages in an amount that will be established at trial.

46.     Defendants' actions have caused and will continue to cause OsteoStrong irreparable harm if not preliminarily and permanently enjoined.

47.     OsteoStrong is therefore entitled to actual damages, punitive damages, and attorney fees against the Defendants, and to enjoin the Defendants' misappropriation of the OsteoStrong's trade secrets pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.003-005.

### Count 3—Breach of Contract

48.     OsteoStrong re-alleges and incorporates by reference paragraphs 1 through 44 as if fully alleged herein.

49.     Defendants entered into the Franchise Agreement which is a valid and enforceable contract.  OsteoStrong performed or tendered performance under the Agreement by granting franchise rights to Defendants and allowing access to confidential trades secrets in the course of

---

[3] *See Beardmore v. Jacobsen*, 131 F. Supp. 3d 656, 670 (S.D. Tex. 2015) "Trade secret misappropriation under Texas law is established by showing (a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff."

Defendants' operation of an OsteoStrong business. All conditions precedent to OsteoStrong's claims for relief in this case have occurred or been performed. Defendants breached the Agreement by improperly claiming copyright ownership in OsteoStrong materials and publishing confidential trade secret material to the world. Defendants have caused, and will continue to cause, OsteoStrong to lose profits.

## VI
## APPLICATION FOR INJUNCTIVE RELIEF

50.     OsteoStrong re-alleges and incorporates by reference paragraphs 1 through 46 as if fully alleged herein.

51.     Rule 65 of the Federal Rules of Civil Procedure governs the granting of preliminary injunctions and temporary restraining orders. "A party seeking a temporary restraining order or other injunction pursuant to Rule 65 … must demonstrate four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Allstate Settlement Corp. v. Doucette*, CIV.A. H-15-1130, 2015 WL 2091767, at *1 (S.D. Tex. May 5, 2015) (citing *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252–53 (5th Cir. 2009); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999)). Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue. *Valley v. Rapides Parish Sell. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Thus, injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion." *Bluefield Water Ass'n*, 577 F.3d at 252–53.

52. OsteoStrong has a substantial likelihood of prevailing on the merits of its DTSA, TUTSA and Breach of Contract claims.

53. At this time, no federal court has detailed the elements a plaintiff must prove to prevail on a claim brought under the DTSA. Cases have, however provided some guidance. In this regard, Texas federal courts' interpretation of the TUTSA, which became effective in 2013, is persuasive. This is so because the statutory language of the TUTSA and the DTSA are substantially similar, owing to the fact that both statutes are modeled on the Uniform Trade Secrets Act. *Compare* Tex. Civ. Prac. & Rem. Code § 134A.002(6) (definition of "trade secret" under TUTSA), *with* 18 U.S.C. § 1839(3) (definition of "trade secret" under DTSA); *see also Henry Schein, Inc. v. Cook*, 16-CV-03166-JST, 2016 WL 3418537, at *4–6 (N.D. Cal. June 22, 2016) (comparing the DTSA with the California Uniform Trade Secrets Act, which is also based on the Uniform Trade Secrets Act). Under the DTSA, however, a claimant can bring a claim for continued misappropriation. *See Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 15–cv–211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (finding viable a continuing misappropriation claim that began pre-enactment because the DTSA defines misappropriation as the "disclosure or use of a trade secret" and the complaint alleged that the defendants "continue[d] to use" the trade secrets after the DTSA was enacted) (emphasis in original) (quoting 18 U.S.C. § 1839(5)(B)); *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 16–cv–1503, 2016 WL 5391394, at *5–7 (M.D. Fla. Sept. 27, 2016) (same); *See also Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Group*, CV 16-2499, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017).

54. To state a claim for trade secret misappropriation under the TUTSA, and presumably under the DTSA, "a plaintiff must show: (1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means;

and (3) use of the trade secret without authorization from the plaintiff." *Glycobiosciences, Inc. v. Woodfield Pharm., LLC*, 4:15-CV-02109, 2016 WL 1702674, at *6 (S.D. Tex. Apr. 27, 2016) (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2725 (2014)).

55.     As explained above, OsteoStrong executed a Franchise Agreement with Defendants defining confidential material and conveying rights to any material created by Defendant to OsteoStrong.  In July 2019 Defendants decided to publish the Confidential Material with the United States Copyright Office and claim ownership of the material in a thinly effort attempt to extort more money out of OsteoStrong.

56.     The Confidential Material provided to Defendants derives independent economic value from not being generally known to the public. All of the confidential trade secret information listed above is not generally known to the public and is invaluable information to set up and run an OsteoStrong franchise location.

57.     On September 20, 2014, Defendants entered into a valid and enforceable Franchise Agreement.  *Exhibit B Franchise Agreement.*  Under the contract, OsteoStrong agreed to provide Defendants access to its trade secrets and confidential information, and Defendants agreed not to disclose the trade secrets and confidential information.  *Id.*  As promised, OsteoStrong provided Defendants access to its trade secrets and confidential information.  However, Defendants did not keep that information confidential.  As explained above, Defendants claimed ownership of the material and filed it in the public domain with the United States Copyright Office.  Defendants' breach of the OsteoStrong Agreement has damaged OsteoStrong in at least two respects: (1) it has damaged OsteoStrong's good will in the industry; and (2) it has deprived OsteoStrong of its

property interest in the trade secrets, while allowing Defendants to reproduce its work without an equivalent investment of time and money for their own gain.

58.     OsteoStrong will suffer imminent and irreparable injury if Defendants are not immediately restrained from continuing to use and disclose OsteoStrong's trade secrets and confidential information.  FED. R. CIV. P. 65(b)(1); *see Sampson v. Murray*, 415 U.S. 61, 88-89 & n.59 (1974).

59.     "The central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages." *Union Nat'l Life Ins. Co. v. Tillman*, 143 F. Supp. 2d 638, 644-45 (N.D. Miss. 2000) (citing *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983)).  And Texas courts have recognized, "[t]he damages occasioned by a case involving breach of confidentiality and misappropriation of trade secrets is, by its nature, irreparable and not susceptible of adequate measurement for remedy at law."  *See Traders Intern., Ltd. v. Scheuermann*, No. CIV.A. H-06-1632, 2006 WL 2521336, at *9 (S.D. Tex. Aug. 30, 2006) (citation omitted).  This is so because it is extremely difficult, if not impossible, to quantify the degree to which a company is harmed when its trade secrets are stolen and disclosed to others.  *See N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (explaining the "loss of trade secrets cannot be measured in money damages because a trade secret once lost is, of course, lost forever") (internal quotation marks, alteration, and citation omitted); *Neo Gen Screening, Inc. v. TeleChem Intern., Inc.*, 69 F. App'x 550, 554 (3d Cir. 2003) (holding "the disclosure of trade secrets would result in irreparable harm … that would not be remedied by monetary damages") (citations omitted).

60.     Here, OsteoStrong has offered considerable evidence that Defendants misappropriated OsteoStrong's trade secrets and confidential information and disclosed them to

the public by filing them with the United States Copyright Office. This alone is sufficient to demonstrate irreparable harm. *See Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 570 (S.D. Tex. 2014) ("the disclosure of confidential information satisfies the irreparable injury prong for purposes of a preliminary injunction") (citation omitted).

61.     At a minimum, Defendants use of OsteoStrong's trade secrets and confidential information will deprive OsteoStrong of its property interest in the trade secrets, while allowing Defendants to reproduce its work without an equivalent investment of time and money. "Such harms are unlikely to be adequately redressed by monetary damages." *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1126 (D. Nev. 2013); *See also Glycobiosciences, Inc.*, 2016 WL 1702674, at *8 (S.D. Tex. Apr. 27, 2016) ("the threatened disclosure of trade secrets constitutes irreparable injury as a matter of law") (citation omitted). Moreover, OsteoStrong is likely to suffer damage to its goodwill because of OsteoStrong's use of its trade secrets and confidential information. *See Ins. Assocs. of Lamar County, LLC v. Bolling*, 2:14CV97-DPJ-FKB, 2014 WL 5437358, at *4 (S.D. Miss. Oct. 24, 2014) (quoting *Tillman*, 143 F. Supp. 2d at 644-45) ("A loss of a business' customers and damage to its goodwill are widely recognized as injuries incapable of ascertainment in monetary terms and may thus be irreparable.").

62.     The threatened harm to OsteoStrong outweighs the harm that a temporary restraining order would inflict on Defendants. There is ample evidence here to demonstrate that OsteoStrong will suffer significant irreparable injury if Defendants are permitted to continue violating the Agreement and the NDA by using OsteoStrong's misappropriated trade secrets and confidential information. Such injury is likely to include the loss of business in the event Defendants disseminate the contents of OsteoStrong's trade secrets and confidential information to those not a part of the franchise organization or competitors, using the trade secrets and

confidential information OsteoStrong spent significant resources developing. If not restrained, the damage to OsteoStrong's business could be incalculable and difficult to detect until too late.

63.     Conversely, Defendants will suffer no legally cognizable harm if temporarily restrained from using or disclosing OsteoStrong's trade secrets and confidential information. Moreover, an injunction would nicely preserve the status quo. It is unlikely that Defendants will be able to offer any legitimate basis for their continued use and disclosure of OsteoStrong's misappropriated trade secrets and confidential information. Accordingly, because Defendants have not respected their contractual duties and have taken actions inconsistent with respecting them in the future, immediate injunctive relief is necessary and appropriate. As such, the balance of hardship tips decidedly in OsteoStrong's favor as the harm to OsteoStrong is irreparable and the harm to Defendants is minimal. *See Dish Network L.L.C. v. Ramirez*, No. 15-CV-04712-BLF, 2016 WL 3092184, at *7 (N.D. Cal. June 2, 2016) (balance of hardships tips in favor of plaintiff seeking injunction when it would "do no more than require Defendant to comply with federal and state...laws") (citation omitted).

64.     Issuance of a temporary restraining order would not adversely affect the public interest and public policy because "there is a generalized public interest in upholding the inviolability of trade secrets and enforceability of confidentiality agreements." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) (internal quotation marks and citation omitted). In other words, the public is overwhelmingly interested in "commercial integrity and protection of legal and property rights." *Core Labs. LP v. Spectrum Tracer Servs., L.L.C.*, 532 F. App'x 904, 911 (Fed. Cir. 2013). Because these interests are at stake here, the public will benefit from the Court enjoining Defendants' continued use and disclosure of OsteoStrong's trade secrets and confidential information. *See Henry Schein, Inc.*, 2016 WL 3212457, at *4 ("[T]he public

18

interest is served when defendant is asked to do no more than abide by trade laws and the obligations of contractual agreements signed with her employer. Public interest is also served by enabling the protection of trade secrets.") (citation omitted).

65.     OsteoStrong is willing to post a bond in the amount the Court deems appropriate, however such a bond is not required pursuant to paragraph 15.5 of the Franchise Agreement. *See Exhibit B paragraph 15.5.*

66.     OsteoStrong requests the Court to enter a temporary restraining order and, after a hearing, a preliminary injunction, instructing Defendants to discontinue dissemination of OsteoStrong's confidential material.

67.     OsteoStrong also requests the Court to enter a temporary restraining order and, after a hearing, a preliminary injunction, instructing Defendants to return OsteoStrong's trade secrets and confidential information, and prohibiting Defendants from continuing to use distribute misappropriated confidential information and trade secrets.   OsteoStrong also requests a permanent injunction.

## VIII
## PRAYER

68.     For the foregoing reasons, OsteoStrong asks that the Court issue citation for Defendants JOHN DE WOLF, DEBORAH NOBLE, DAN MOYER, NOBEL PROPERTY MANAGEMENT, LLC, and LIVING TREE OF ABQ LTD. CO  to appear and answer, and that OsteoStrong be awarded judgment against Defendants for the following:

a.   A temporary restraining order, temporary injunction and permanent injunction;

b.   Actual Damages;

c.   Equitable Relief;

d. Exemplary Damages;

e. Prejudgment and Postjudgment Interest;

f. Court Costs;

g. Attorney Fees; and

h. All other relief to which OsteoStrong is entitled.

69. For the foregoing reasons, OsteoStrong asks that the Court issue citation for Defendant KARYN A. TEMPLE, in her official capacity as the Acting Register of Copyrights of the U.S. Copyright Office to appear and answer, and that OsteoStrong be awarded judgment against Defendants for the following:

a. A temporary restraining order, temporary injunction and permanent injunction.

Respectfully submitted,

*/s/ Howard L. Steele, Jr.*
Howard L. Steele, Jr.
Attorney-In-Charge
State Bar No.: 24002999
Federal Bar No. 21615
600 Travis St. suite 7373
Houston, Texas 77002
Telephone: (713) 659-2600
Facsimile: (713) 659-2601
hsteele@steele-law-group.com

ATTORNEY FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas ▼

| | |
|---|---|
| OSTEOSTRONG FRANCHISING, LLC | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| JOHN DE WOLF, DEBORAH NOBLE, DANIEL | ) |
| MOYER, NOBLE PROPERTY MANAGEMENT, LLC, | ) |
| and LIVING TREE OF ABQ LTD. CO | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* John De Wolf
137 Saddle Spur Trail, Tijeras, New Mexico, 87059

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Howard L. Steele
> Steele Law Group, PLLC
> 600 Travis St. Suite 7373
> Houston, TX 77002

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                _____
                                                                *Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas ▾

| | |
|---|---|
| OSTEOSTRONG FRANCHISING, LLC | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| JOHN DE WOLF, DEBORAH NOBLE, DANIEL | ) |
| MOYER, NOBLE PROPERTY MANAGEMENT, LLC, | ) |
| and LIVING TREE OF ABQ LTD. CO | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Daniel Moyer
137 Saddle Spur Trail, Tijeras, New Mexico, 87059

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Howard L. Steele
Steele Law Group, PLLC
600 Travis St. Suite 7373
Houston, TX 77002

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
*Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas ▼

| | |
|---|---|
| OSTEOSTRONG FRANCHISING, LLC | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| JOHN DE WOLF, DEBORAH NOBLE, DANIEL | ) |
| MOYER, NOBLE PROPERTY MANAGEMENT, LLC, | ) |
| and LIVING TREE OF ABQ LTD. CO | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Deborah Noble
137 Saddle Spur Trail, Tijeras, New Mexico, 87059

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Howard L. Steele
> Steele Law Group, PLLC
> 600 Travis St. Suite 7373
> Houston, TX 77002

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas ▾

| | |
|---|---|
| OSTEOSTRONG FRANCHISING, LLC | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| JOHN DE WOLF, DEBORAH NOBLE, DANIEL | ) |
| MOYER, NOBLE PROPERTY MANAGEMENT, LLC, | ) |
| and LIVING TREE OF ABQ LTD. CO | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Living Tree of ABQ, Co. Ltd.
c/o Glenna Donnell
137 Saddle Spur Trail, Tijeras, New Mexico

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Howard L. Steele
Steele Law Group, PLLC
600 Travis St. Suite 7373
Houston, TX 77002

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
*Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas  ▾

| | |
|---|---|
| OSTEOSTRONG FRANCHISING, LLC | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| JOHN DE WOLF, DEBORAH NOBLE, DANIEL MOYER, NOBLE PROPERTY MANAGEMENT, LLC, and LIVING TREE OF ABQ LTD. CO | ) ) ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Noble Property Management, LLC
c/o Ross B. Perkal
708 Marquette NW, Albuquerque, NM 87102

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Howard L. Steele
Steele Law Group, PLLC
600 Travis St. Suite 7373
Houston, TX 77002

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                      *Signature of Clerk or Deputy Clerk*